1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DUPREE PIERRE BARBER,                    No.  2:16-cv-0379 TLN AC

12                      Petitioner,

13        v.                                  FINDINGS AND RECOMMENDATIONS

14   J. SOTO, Warden,

15                      Respondent.

16

17        Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2013 conviction for first

19   degree murder and related offenses.  ECF No. 1.  Respondent has answered, ECF No. 13, and

20   petitioner has filed a reply, ECF No. 17.

21                                 BACKGROUND

22   I.       Proceedings In the Trial Court

23        A.  Preliminary Proceedings

24        Petitioner was charged in Sacramento County Superior Court with (1) first degree murder

25   with two special circumstances (lying-in-wait and shooting from a car), (2) shooting at an

26   occupied car, and (3) firearm possession by a felon.  Firearm enhancements were also alleged as

27   to Counts One and Two.

28   ////

A pretrial suppression motion challenged the search of petitioner's car (a vehicle different than the one he was alleged to have used in commission of the homicide) as the product of an illegally obtained statement.  The facts regarding that issue are addressed below in relation to Claim One.

B.  The Evidence Presented at Trial

1.  Prosecution Case

Steven Ebert, a park maintenance superintendent of the Cordova Recreation and Park District, was found shot to death inside his bullet-riddled vehicle in January 2012.  The park employee who found the body saw a compact SUV drive away from the scene.  Later the same day, police located a compact SUV about a half-mile from the shooting site.  The SUV matched the description given by the park employee.  It had sustained damage to the right rear side and tire, and corresponding broken-off vehicle body parts were found by a tree near Ebert's car.

The SUV belonged to petitioner, who had bought it less than a week before by putting the entire purchase price on a credit card.  The SUV contained identification papers for petitioner, and a Park District jacket with petitioner's employee identification badge in the pocket. Petitioner's fingerprints were found on the SUV's exterior driver's side door, and a revolver was found on the floorboard.  Six casings within the cylinder had all been fired; no expended casings were found at the scene of the shooting, indicating that a revolver had been used.  The front passenger visor of petitioner's SUV had a hole in it that was surrounded by gunshot residue. Ballistics analysis concluded that a bullet from the gun in petitioner's car had killed Ebert.

Petitioner had been laid off from his job at the Park District less than a week before he bought the SUV, and less than two weeks before Ebert was killed.  Petitioner had reacted angrily to the layoff.  Petitioner and Ebert had long had a contentious relationship.  Petitioner had filed a state administrative complaint for discrimination and harassment against Ebert and others in 2008, and had sued Ebert and others in 2009.  The lawsuit settled in 2010.

Petitioner was arrested the day after the homicide.  He contacted the police to report that he had been in a fight, and said that a friend told him he might be wanted though he did not know why.  Petitioner's Nissan car was located and searched after his arrest.  Items found in the trunk

1  included a binder with document about job layoffs, and a sealed envelope containing petitioner's

2  passport, social security card, and birth certificate.

3       2.  Defense Case

4      Petitioner testified in his own defense.  He stated that he had no reason to kill Ebert

5  because he already had another job; he also had a job offer from a friend in West Virginia.  He

6  had bought the SUV to drive out to West Virginia, which is also why he had gathered his vital

7  documents.  He made up the story about a fight because a friend told him that someone at the

8  Park District had been killed, and he feared that if he mentioned the killing to police they would

9  have come at him with guns drawn.

10     C.  Outcome

11      On August 1, 2013, the jury found petitioner guilty of first degree murder, and found that

12  both special circumstances and the firearm enhancement were true.  2 CT 313.[1]  Petitioner was

13  also found guilty of shooting at an occupied car, and firearm possession by a felon.  2 CT 314.

14      Petitioner was sentenced on August 28, 2013, to life without the possibility of parole plus

15  three years for the felon-in-possession count.  2 CT 340, 342; 5 RT 1189.

16    II.      Post-Conviction Proceedings

17      Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

18  conviction on February 27, 2015.  Lodged Doc. 14.  The California Supreme Court denied review

19  on June10, 2015.  Lodged Doc. 16.

20      Petitioner filed no state court applications for collateral review.  The federal petition, ECF

21  No. 1, states nine claims that appear to correspond to the issues raised on direct appeal, see

22  Lodged Doc. 11 (Appellant's Opening Brief).

23            STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

24      28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

25  1996 ("AEDPA"), provides in relevant part as follows:

26          (d) An application for a writ of habeas corpus on behalf of a person

27          in custody pursuant to the judgment of a state court shall not be

28    [1]  "CT" refers to the Clerk's Transcript on Appeal.

3

granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 582 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

////

4

1    Review under § 2254(d) is limited to the record that was before the state court.  <u>Cullen v.</u>

2    <u>Pinholster</u>, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

3    reasonably applied clearly established federal law to the facts before it.  <u>Id.</u> at 181-182.  In other

4    words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  <u>Id.</u> at 182.

5    Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

6    confined to "the state court's actual reasoning" and "actual analysis."  <u>Frantz v. Hazey</u>, 533 F.3d

7    724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

8    summarily, without a reasoned opinion.  In <u>Richter</u>, <u>supra</u>, the Supreme Court held that when a

9    state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

10   must determine what arguments or theories may have supported the state court's decision, and

11   subject those arguments or theories to § 2254(d) scrutiny.  <u>Richter</u>, 582 U.S. at 102.

DISCUSSION

13   I.    Claim One: <u>*Miranda* Violation and Involuntary Statement</u>

14         A.   <u>Petitioner's Allegations and Pertinent State Court Record</u>

15   Petitioner alleges that his conviction was based on an involuntary statement obtained by

16   the police.  ECF No. 1 at 4.  The factual basis for the claim is set forth in full as follows: "It is

17   undisputed the police coercively violated petitioner's Miranda rights, ignoring his request for

18   counsel, due process, and fair trial."  <u>Id.</u>  R

19   Review of the record indicates that petitioner did not confess or make any incriminating

20   statement to police regarding the homicide.  Rather, he contends that his conviction was based on

21   evidence obtained from a vehicle after he gave an involuntary statement about the vehicle's

22   location.

23   Petitioner filed a motion in the trial court to suppress the evidence seized from his Nissan

24   car.  1 CT 204-211.  Petitioner contended that the detective had violated his rights by continuing

25   to question him about the location of the Nissan after petitioner had invoked his right to counsel.

26   At the suppression hearing, the parties focused on the issue whether petitioner's eventual

27   ////

28   ////

5

1  statements about the car's location had been voluntary.[2]  The detective testified that petitioner had

2  unambiguously invoked his right to counsel, and that petitioner was subsequently asked where the

3  Nissan was.  Petitioner replied only that it was in a safe location.  The detective then told

4  petitioner that if he did not disclose the location, the car was subject to a felony vehicle stop

5  because there was a warrant out.  The detective testified that he explained:

6
> That means that the cops are looking for that vehicle for a specific
> reason and that they're going to take that—they're going to do a

7
> vehicle stop, and it's going to be very specific.

8
> The cops are going to pull their guns out. They're going to pull
> whoever is in that car out at gunpoint. They're going to handcuff

9
> them and they're going to detain them and inquire why they're
> driving that car.

10

11  1 RT 153-154.[3]  Petitioner's account of the exchange was substantially similar, though he

12  testified that the detective had expressly warned him that anyone driving the car "could be hurt,

13  seriously hurt."  1 RT 240.  Shortly thereafter, petitioner provided the car's location.

14      After hearing all the evidence, the trial court ruled that the statement had been coerced but

15  that discovery of the vehicle had been inevitable.  1 RT 259-260.  The evidence from the Nissan

16  was accordingly admitted at trial.

17      B.  The Clearly Established Federal Law

18      Before a suspect in custody may be questioned, he must be advised that "he has the right

19  to remain silent, that anything he says can be used against him in a court of law, that he has the

20  right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed

21  for him prior to any questioning if he so desires."  Miranda v. Arizona, 384 U.S. 436, 479 (1966).

22  When a suspect invokes these rights, questioning must cease.  Miranda, 384 U.S. at 474.  To be

23  effective, invocation of the right to counsel must be unequivocal.  Davis v. United States, 512

24  U.S. 452, 459 (1994).  Statements obtained in violation of this rule are generally not admissible at

25  trial.  Miranda, 384 U.S. at 479.

26

27
---
[2] The complete transcript of the suppression hearing is found at 1 RT 91-260.

28
[3] "RT" refers to the Reporter's Transcript on Appeal.

1    "Any statement given freely and voluntarily without any compelling influences is, of

2    course, admissible in evidence."  Id. at 478.  Involuntary or coerced statements, on the other hand,

3    may not be used against a criminal defendant; their admission violates due process regardless of

4    advisements or waiver of rights.  See Jackson v. Denno, 378 U.S. 368, 385-386 (1964); Lisenba

5    v. California, 314 U.S. 219, 236-237 (1991).

6          The erroneous admission of non-Mirandized or otherwise involuntary statements is

7    subject to harmless error review.  Arizona v. Fulimante, 499 U.S. 279, 295, 310 (1991).  The

8    question on direct review is whether any error was harmless beyond a reasonable doubt.

9    Chapman v. California, 386 U.S. 18, 24 (1967).

10               C.  The State Court's Ruling

11         This claim was raised on direct appeal.  Because the California Supreme Court denied

12   discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned

13   decision on the merits and is the subject of habeas review in this court.  See Ylst v. Nunnemaker,

14   501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

15         The appellate court stated as follows:

16         It is undisputed that the police violated defendant's Miranda rights in
17         questioning him about the Nissan's location. The police ignored
           defendant's invocation of counsel, and prodded him to divulge the
18         car's location by warning him that his family risked a gun-drawn
           felony vehicle stop if they traveled in that car.

19         The trial court denied defendant's motion to suppress the Nissan
           evidence (as noted, the car contained a sealed envelope with
20         defendant's passport, Social Security card, and birth certificate). The
           court did so on the ground the police inevitably would have
21         discovered the car (and the evidence it contained) pursuant to leads
           independent of defendant's Miranda-violative statement. These leads
22         included contact with defendant's family members and evidence
           disclosing cell phone locations. (In re Angel R. (2008) 163
23         Cal.App.4th 905, 909-910 [inevitable discovery is a proper ground
           for denying a Miranda-based motion to suppress].)
24
           Defendant contends the trial erred in denying his suppression motion
25         on the ground of inevitable discovery. There is no need to analyze
           whether the trial court erred in this regard. We can proceed straight
26         to the issue of prejudice, because clearly there was none here.
           Assuming, then, merely for the sake of argument, that the trial court
27         did err in denying defendant's motion to suppress the Nissan
           evidence, any such error was harmless beyond a reasonable doubt.
28         (Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].)

1

2

3

4

5

6

7

> To describe the evidence against defendant—leaving aside the evidence found in his Nissan—as overwhelming, is an understatement. There is the evidence surrounding the SUV—Norton's apparent view of it fleeing the shooting scene; also, its matching damage, its purchase details, its identification with defendant, its latent prints, its gunshot residue, and its revolver encompassing the ballistics evidence. Then we have defendant's strong motive, arising from a long-standing and contentious history with the victim, Ebert, punctuated by defendant's layoff just days before the shooting. Moreover, as a District employee, defendant would have known that Ebert routinely arrived at the site of the shooting each workday morning at 6:00 a.m. Finally, although the Nissan evidence inferred that defendant intended to flee after the

8

9

> shooting, the probative value of this evidence, as the People point out, was diminished by defendant's decision essentially to surrender to the police the day after the shooting.

10

> We find no prejudicial error regarding the admission of the Nissan evidence.

11

12

People v. Barber, 2015 Cal. App. Unpub. LEXIS 1349, *5-7, 2015 WL 872141, *2-3 (Feb. 27,

13

2015).[4]

14

       D.  Objective Reasonableness Under § 2254(d)

15

     When a state court denies a constitutional claim on harmless error grounds, the question

16

on review under AEDPA is the reasonableness of the harmless error determination.  Mitchell v.

17

Esparza, 540 U.S. 12, 17-18 (2003) (per curiam).  This court must defer to the court of appeal's

18

harmless error determination unless it was in conflict with the reasoning or the holdings of

19

Supreme Court precedent, or if it applied harmless error review in an objectively unreasonable

20

manner.  Inthavong v. Lamarque, 420 F.3d 1055, 1058-59 (9th Cir. 2005), cert. denied, 547 U.S.

21

1059 (2006).

22

     Here, the California court applied the correct standard, Chapman, and there was nothing

23

unreasonable about its application of that standard.  The state court was quite correct that the

24

evidence against petitioner was overwhelming without regard to the items found in the Nissan:

25

Ebert had been killed with the gun found in petitioner's recently-purchased SUV, which had been

26

fired from inside the SUV.  Moreover, petitioner had ample motive to kill Eber.  On this record,

27

28

---

[4]  The copy of the opinion submitted by respondent, Lodged Doc. 14, contains only odd-numbered pages.  Accordingly, the undersigned cites to the versions available online.

1   no reasonable jurist could disagree that any error was harmless beyond a reasonable doubt.

2   Accordingly, habeas relief is barred by § 2254(d).

3       II.      Claim Two: Admission of Prejudicial Evidence in Violation of Due Process

4               A.   Petitioner's Allegations and Pertinent State Court Record

5       Petitioner alleges that his right to due process was violated by the admission of "needless

6   and unduly prejudicial evidence." ECF No. 1 at 4. The factual basis for the claim is set forth in

7   full as follows: "Admitted old legal files and statements." Id.

8       At trial, the prosecution presented evidence of the regulatory complaint and lawsuit that

9   petitioner had filed against Ebert, alleging employment discrimination and harassment. This

10  evidence was offered on the issue of petitioner's motive, and was ultimately presented to the jury

11  in the form of stipulated facts. 1 RT 261, 3 RT 815-816, 1 CT 283. The prosecution also

12  presented testimony that Ebert had made statements in 2009 that petitioner was volatile and might

13  be dangerous. 3 RT 825-828. This evidence was admitted in support of the prosecution theory

14  that Ebert would have stopped his car only if he did not recognize the vehicle petitioner was

15  driving as petitioner's (giving plaintiff a reason to buy a different vehicle for the purpose of lying

16  in wait). 1 RT 265.

17              B.   The Clearly Established Federal Law

18      The admission of evidence is governed by state law, and habeas relief does not lie for

19  errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991). The erroneous admission of

20  evidence violates due process, and thus supports federal habeas relief, only when it results in the

21  denial of a fundamentally fair trial. Id. at 72. The Supreme Court has rejected the argument that

22  due process necessarily requires the exclusion of prejudicial or unreliable evidence. See Spencer

23  v. Texas, 385 U.S. 554, 563-564 (1967); Perry v. New Hampshire, 565 U.S. 228, 245 (2012).

24              C.   The State Court's Ruling

25      The California Court of Appeal ruled as follows:

26          Defendant contends the trial court erred in admitting into evidence
            (1) defendant's administrative agency complaint and judicial lawsuit
27          to show motive, and (2) Ebert's statements that defendant might be
            dangerous. We review a trial court's evidentiary rulings for abuse of
28          discretion. (People v. Guerra (2006) 37 Cal.4th 1067, 1113 (Guerra),

                                              9

disapproved on another point in <u>People v. Rundle</u> (2008) 43 Cal.4th 76, 151.) We see no abuse here.

As for the legal filings, as noted, defendant filed an administrative complaint with the Department of Fair Employment and Housing in 2008 against Ebert, among other District personnel, for discrimination and harassment; and followed this in 2009 with a similar judicial lawsuit (adding retaliation as well). Defendant principally objected that this evidence was irrelevant and too remote in time. The relevance is obvious: defendant's motive for shooting Ebert. As for remoteness, the shooting took place at the beginning of 2012. These legal actions culminated with a dismissal at the end of 2010 (essentially adverse to defendant). Thus, the shooting occurred only one year after the legal actions ended; the trial court did not abuse its discretion in rejecting defendant's remoteness claim.

As for Ebert's statements of dangerousness, they were part of the evidence of the long-standing contentious relationship between Ebert and defendant evidenced by the District's human resources personnel. In January 2009, and again in November 2009, Ebert expressed concern that defendant could be dangerous.

Evidence Code section 1250 allows the admission of a trustworthy statement of a declarant's then existing state of mind or emotion if offered to prove or explain conduct of the declarant. (<u>See</u> Evid. Code, § 1252 [circumstances indicating lack of trustworthiness].) Ebert's statements of defendant's dangerousness were admitted as indications of Ebert's state of mind or emotion regarding defendant to explain Ebert's conduct—i.e., believing defendant could be dangerous, Ebert would not have stopped his car to talk to defendant on the morning of the shooting (had he known the newly purchased SUV was defendant's car); this tended to show the special circumstance that defendant was lying-in-wait for Ebert. Coupling this basis of admission with the fact that Ebert's two challenged statements were made in the course of a meeting and an investigation documented by the District's human resources department—i.e., circumstances indicating trustworthiness—we conclude the trial court did not abuse its discretion in admitting them.

Lastly, because we have concluded the trial court properly admitted the legal filings and Ebert's statements of dangerousness under state evidence law, we reject defendant's additional claim that their admission deprived him of due process and a fair trial.

<u>People v. Barber</u>, 2015 Cal. App. Unpub. LEXIS 1349 at *7-9, 2015 WL 872141 at *3.

### D.  Objective Reasonableness Under § 2254(d)

The state court's application of the California Evidence Code is not reviewable here.

<u>Estelle</u>, 502 U.S. at 67.  Even if the evidence was admitted in error, habeas relief is barred under AEDPA because no clearly established federal law provides that it violates due process to admit prejudicial evidence.  Where no clearly established federal law supports petitioner's claim, the

1  state court cannot have ruled unreasonably.  See Wright v. Van Patten, 552 U.S. 120, 125-26

2  (2008) (per curiam) (where no Supreme Court precedent controls the issue raised by a habeas

3  petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable

4  application of, clearly established federal law); see also Holley v. Yarborough, 568 F.3d 1091,

5  1101 (9th Cir. 2009) (denying relief under § 2254(d), for lack of clearly established federal law,

6  on claim that prejudicial evidence denied due process)

7        Even under pre-AEDPA standards, any error cannot remotely be considered to have

8  resulted in a fundamentally unfair trial.  Petitioner's layoff provided sufficient evidence of motive

9  even without consideration of the discrimination complaints.  The evidence that petitioner

10  committed the homicide was overwhelming, so even if the statement's regarding petitioner's

11  potential dangerous had been improperly considered as character evidence,[5] and even if that

12  violated due process, there is no reasonable likelihood it affected the verdict.  See Brecht v.

13  Abrahamson, 507 U.S. 619, 638 (1993).

14      III.    Claim Three: Exclusion of Defense Evidence

15          A.  Petitioner's Allegations and Pertinent State Court Record

16        Petitioner frames his third ground for relief as "Exclusion of three relevant key lines of

17  defense evidence."  ECF No. 1 at 5.  The supporting facts are set forth, in full, as follows:

18  "Failure to investigate key third party evidence, denied petitioner due process, a fair trial, and the

19  right to present a defense."  Id.

20        At trial, the defense sought to introduce evidence that another park employee had

21  threatened to "come back and shoot someone" if he was laid off, and that several other park

22  employees had complained of discrimination.  This evidence was excluded.  1 RT 56-59, 4 RT

23  905-910.  Petitioner proffered no evidence that connected any of the other disgruntled employees

24  to the homicide.

25  _____

26  [5]  It does not appear that the jury was given a limiting instruction regarding the evidence of
Ebert's statements, or was instructed on consideration of character evidence.  Petitioner has not

27  challenged these omissions here, and they are immaterial to the analysis in any event.  AEDPA
would bar any such claim for the reasons stated, and petitioner cannot meet the Brecht prejudice

28  standard that would apply on de novo review.

1    Both the defense and the prosecution sought admission of the full 911 call made by park

2    employee Norton when he found Ebert's body,[6] but the trial court admitted only part of the call.

3    2 RT 325-334.

4    B.  The Clearly Established Federal Law

5    The Constitution guarantees to criminal defendants the right to present a defense.

6    Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986).

7    This includes the right to present reliable evidence that another person committed the charged

8    crime.  Holmes v. South Carolina, 547 U.S. 319 (2006).  State rules establishing standards for the

9    admissibility of third-party culpability evidence are constitutionally permissible, as long as they

10   are rationally related to the legitimate purpose of excluding evidence that has only a weak logical

11   connection to the central issues at trial.  Id. at 326-30.

12   Where third-party culpability is not at issue, evidentiary rulings implicate constitutional

13   rights only if they render a trial fundamentally unfair.  Estelle, 502 U.S. at 72.

14   C.  The State Court's Ruling

15   The California Court of Appeal ruled as follows:

16
     Defendant claims the trial court erred in excluding three key lines of
     defense evidence, denying him his constitutional rights to a fair trial.
17

18   Again, we review a trial court's evidentiary rulings for abuse of
     discretion. (Guerra, supra, 37 Cal.4th at p. 1113.) Addressing the
19   three evidentiary lines in turn, we see no abuse here.

20   (1) Defendant contends the trial court erred in excluding a statement
     from another District employee, Kenneth Marks, which stated, " 'If
21   I get laid off I'm going to come back and shoot somebody.' "
     Defendant offered this evidence to show the police improperly
22   focused on defendant to the exclusion of others, and that defendant
     was not the only disgruntled District employee.

23   As the trial court correctly observed, defendant wanted to show that
     the police "failed to investigate third party culpability, [a]nd, because
24   of that, the third party culpability . . . rules of admissibility . . .
     govern."
25

26   ─────────────────────
     [6]  In the 911 call, park employee Norton voiced his suspicion that petitioner was responsible for
27   the shooting.  The defense wanted the full recording played in order to open the door to the
     evidence that another laid off employee had threatened violence.  The defense also wanted the jury
     to hear the allegedly racist ways in which Norton spoke of petitioner, to show that his suspicions
28   were the result of racial bias.

12

Third party culpability evidence is admissible if it is capable of raising a reasonable doubt of defendant's guilt. (<u>People v. Hall</u> (1986) 41 Cal.3d 826, 833.) "[E]vidence of mere motive or opportunity to commit the crime in another person, without more, will not suffice to raise a reasonable doubt about a defendant's guilt: there must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime." (<u>Ibid</u>.)

Defendant did not offer any direct or circumstantial evidence linking District employee Marks to the actual perpetration of the offenses here. Consequently, the trial court did not err in excluding Marks's statement.

(2) For similar reasons, we conclude the trial court did not err in excluding evidence, under Evidence Code section 352 (probative value outweighed by prejudicial effect, jury confusion, or time consumption), that two other District employees (neither of whom was Marks) had filed discrimination lawsuits against the District similar to defendant's, and around the same time.

(3) Lastly, the prosecution sought admission of District employee Scott Norton's full 911 call at the scene of the shooting, to characterize the hateful relationship between defendant and Ebert; in that call, Norton disclaims wanting to speculate, notes the District recently laid off a few people, but acknowledges that the only person who comes to mind as responsible for the shooting is defendant. In light of the prosecution's offer of proof, defendant too sought the call's admission so he could examine why Norton picked him, which, defendant believed, was racially motivated.

We think the trial court, on its own initiative, struck the right balance, again under Evidence Code section 352, in excluding this evidence, the foundations of which were grounded in speculation from both sides.

Given this reasoning and these conclusions, we also reject defendant's constitutionally based (unfair trial) claims regarding these three lines of evidence.

<u>People v. Barber</u>, 2015 Cal. App. Unpub. LEXIS 1349 at *9-12, 2015 WL 872141 at *4.

    D.  <u>Objective Unreasonableness Under § 2254(d)</u>

The appellate court's resolution of the evidentiary ruling under California law is not reviewable here. <u>See</u> <u>Estelle</u>, 520 U.S. at 67. The summary rejection of the constitutional claim cannot be faulted, because petitioner never made a showing of third-party culpability sufficient to support a prima facie case of the denial of his constitutional right to present a defense. Without more, evidence that two other employees had complained of discrimination, and that still another employee had made a threat, bore only a weak logical connection to the central issues at trial.

1   Accordingly, there was no infringement of petitioner's right to present a defense.  See Holmes,

2   547 U.S. 319 326-30.

3          Accordingly, the only available theory of federal rights here is a general due process claim

4   based on fundamental fairness.  Relief on such a claim is categorically barred by AEDPA,

5   however, because no U.S. Supreme Court precedent establishes the right petitioner seeks to

6   vindicate here.  See Wright, 552 U.S. at 125-126.  The claim would fail even under pre-AEDPA

7   standards because, in light of the record as a whole, the exclusion of the proffered defense

8   evidence cannot plausibly be found to have rendered the trial fundamentally unfair.  See Estelle,

9   520 U.S. at 72.

10      IV.    Claim Four: Admission of Criminal History Information in Violation of Due Process

11             A.   Petitioner's Allegations and Pertinent State Court Record

12         Petitioner contends his rights to due process and a fundamentally fair trial were violated

13   by the admission of "two unsanitized domestic felony assaults."  ECF No. 1 at 5.

14         Petitioner testified at trial and was impeached with the fact that he had twice been

15   convicted of "felony domestic assaults," once in 1996 and once in 1998.  4 RT 935.  The defense

16   objected to admission of the older conviction as stale, and asked that the other conviction be

17   referred to only as a crime of moral turpitude.  4 RT 894-900.

18         The jury was instructed that a witness's prior felony conviction could be considered in

19   evaluating credibility, but did not necessarily impair credibility.  1 CT 295-296.

20             B.   The Clearly Established Federal Law

21          Witness impeachment is an evidentiary matter, governed by state law that does not

22   provide a basis for federal habeas relief unless the evidentiary ruling renders the trial

23   fundamentally unfair.  See Estelle, 520 U.S. at 67, 72.

24             C.   The State Court's Ruling

25         The California Court of Appeal ruled as follows:

26             Defendant contends the trial court erred in admitting into evidence,
               to impeach him, two felony "domestic assault" convictions, one from
27             1996 and the other from 1998. Defendant urged the trial court to
               exclude the older conviction, and to sanitize the more recent one by
28             referring to it only as a felony of moral turpitude.

14

As defendant's argument concedes, these two felony domestic assault convictions were crimes of moral turpitude. Thus, they met the threshold requirement for impeachment admissibility. (<u>People v. Castro</u> (1985) 38 Cal.3d 301, 314-316.)

But even if we were to assume for the sake of argument that these offenses were too remote, too unrelated to credibility, and "two" many, we would not reverse. This is because the evidence against defendant, as summarized in part I. of the Discussion, was overwhelming, and because the trial court effectively instructed the jurors that they could consider these offenses "only for [the] purpose" of "evaluating the credibility of the witness's testimony." (CALCRIM Nos. 315, 316.) It is not reasonably probable that defendant would have fared better had these two convictions not been admitted. (<u>People v. Watson</u> (1956) 46 Cal.2d 818, 836 [setting forth this standard of harmless error for state law errors].)

To the extent defendant raises constitutionally based unfair trial claims involving this evidence, we reject those claims too. Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional Watson test. (<u>People v. Partida</u> (2005) 37 Cal.4th 428, 439.) The admission of these two convictions for impeachment purposes did not implicate fundamental unfairness.

<u>People v. Barber</u>, 2015 Cal. App. Unpub. LEXIS 1349 at *12-13, 2015 WL 872141 at *4-5.

### D.   <u>Objective Unreasonableness Under § 2254(d)</u>

There is nothing unreasonable, or inconsistent with federal constitutional principles, in the state court's analysis.  Even if petitioner's impeachment with the priors had been erroneous, AEDPA would bar relief because no Supreme Court precedent states that jury exposure to prejudicial criminal history information violates a defendant's constitutional rights.  <u>See</u> <u>Wright</u>, 547 U.S. 326-330.  Under pre-AEDPA standards the claim would also fail, because letting the jury know petitioner had two convictions for felony domestic assault did not render the trial fundamentally unfair.  <u>See</u> <u>Estelle</u>, 520 U.S. at 72.  No details regarding the domestic assault cases were presented, the jury was properly instructed, and in light of the evidence as a whole there can have been no effect on the verdict.

### V.   <u>Claim Five: Instructional Error Regarding Impeachment with Felony Convictions</u>

#### A.   <u>Petitioner's Allegations and Pertinent State Court Record</u>

Petitioner claims that his rights to due process and a fair trial were violated by the trial court's failure, in relation to the giving of CALCRIM No. 316, to "sua sponte […] instruct jury may not impeach the petitioner."  The supporting facts state further: "May not be used to infer the

1      petitioner's predisposition to commit crimes."  ECF No. 1 at 6.

2             The jury was instructed with CALCRIM 316, which addresses the impeachment of

3      witnesses with prior felony convictions.  1 CT 294-295.  On appeal, petitioner argued that the trial

4      court should have sua sponte instructed the jury that prior felony convictions used for

5      impeachment may not be considered as character or propensity evidence.  See Lodged Doc.11 at

6      66-72.

7                     B.   The Clearly Established Federal Law

8             Erroneous jury instructions do not support federal habeas relief unless the infirm

9      instruction so infected the entire trial that the resulting conviction violates due process.  Estelle,

10     502 U.S. at 72; Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("'[I]t must be established

11     not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but

12     that it violated some [constitutional right]'").  The challenged instruction may not be judged in

13     artificial isolation, but must be considered in the context of the instructions as a whole and the

14     trial record overall.  Estelle, 502 U.S. at 72.  Moreover, relief is only available if there is a

15     reasonable likelihood that the jury has applied the challenged instruction in a way that violates the

16     Constitution.  Id. at 72-73.

17                    C.   The State Court's Ruling

18            The California Court of Appeal ruled as follows, as part of its discussion of the previous

19     issue (admission of the unsanitized priors):

20                     In a related contention, defendant claims the trial court should have
                       instructed on its own initiative (sua sponte) that the jury could not
21                     use these offenses to determine that defendant was a bad character or
                       had a criminal propensity. As noted, the limiting instructions the trial
22                     court gave the jurors effectively told them they could use this prior
                       crimes evidence "only for [the] purpose" of evaluating witness
23                     credibility. "It is axiomatic that '[j]urors are presumed able to
                       understand and correlate instructions and are further presumed to
24                     have followed the court's instructions.' " (People v. Hernandez
                       (2010) 181 Cal.App.4th 1494, 1502.) Consequently, we reject this
25                     contention.

26     People v. Barber, 2015 Cal. App. Unpub. LEXIS 1349 at *13, 2015 WL 872141 at *5.

27     ////

28     ////

1        D.   Objective Unreasonableness Under § 2254(d)

2        To the extent the appellate court resolved this issue as a matter of California law, its ruling

3   is not reviewable here.  Estelle, 520 U.S. at 67.  And there was nothing unreasonable in the

4   court's implied rejection of petitioner's due process argument.  No clearly established federal law

5   supports a different result.  When this alleged instructional error is considered in the context of

6   the jury instructions as a whole—particularly the instruction that prior convictions could only be

7   considered as to testimonial credibility—and the trial record overall, no reasonable jurist could

8   find fundamental unfairness.  Estelle, 502 U.S. at 72.  Moreover, there is no reasonable likelihood

9   that the jury considered the impeachment evidence as character evidence or that this evidence

10  affected the verdict.  Accordingly, the claim fails under any standard.

11      VI.    Claim Six:  Jury Instruction Regarding a False or Misleading Statement by Defendant

12              A.  Petitioner's Allegations and Pertinent State Court Record

13      Petitioner alleges that the "[t]rial court used CALCRIM No. 362, prejudicially [affecting]

14  the jury. . . .  A statement that petitioner made cannot prove guilt by itself."  ECF No.1 at 6.

15      Evidence was presented that when petitioner contacted the police on the day after the

16  homicide, knowing that he was wanted, he falsely reported that he had been in a fight.

17      The jury was instructed according to CALCRIM 362 as follows:

18          If the defendant made a false or misleading statement before this trial
            relating to the charged crime, knowing the statement was false or
19          intending to mislead, that conduct may show he was aware of his
            guilt of the crime and you may consider it in determining guilt.
20
            If you conclude that the defendant made the statement, it is up to you
21          to decide its meaning and rank.   However, evidence that the
            defendant made such a statement cannot prove guilt by itself.
22

23  1 CT 297.

24              B.  The Clearly Established Federal Law

25      Erroneous jury instructions do not support federal habeas relief unless the infirm

26  instruction so infected the entire trial that the resulting conviction violates due process.  Estelle,

27  502 U.S. at 72; Donnelly, 416 U.S. at 643.  The challenged instruction must be considered in the

28  context of the instructions as a whole and the trial record overall.  Estelle, 502 U.S. at 72.  Relief

1   is only available if there is a reasonable likelihood that the jury has applied the challenged

2   instruction in a way that violates the Constitution. Id. at 72-73.

3                    C.   The State Court's Ruling

4         The California Court of Appeal ruled as follows:

5                The trial court instructed the jury with CALCRIM No. 362. That
                 instruction essentially stated that if defendant, prior to trial, made an
6                intentionally false or misleading statement relating to the charged
                 crime, then the jury could, but need not, consider the statement in
7                determining guilt and that such a statement could not prove guilt by
                 itself. Apparently, this instruction was directed to defendant's
8                statement to the police that he was turning himself in for a mere fight.

9                Defendant argues the trial court erred in giving this instruction,
                 because he (defendant) rationally explained why he made this
10               statement—he feared facing headlong armed officers if he said he
                 had a murder warrant; thus, the statement was not intentionally false
11               or misleading.

12               Assuming for the sake of argument (1) that this instruction affects
                 defendant's substantial rights (§ 1259), so his failure to object to it
13               does not mean he has forfeited this contention, and (2) that the trial
                 court erred in giving this instruction, we would not reverse. Again,
14               we direct the reader to the harmless error analysis set forth in part I.
                 of the Discussion. We further note that this instruction did not render
15               the trial fundamentally unfair, so the assumed error does not rise to
                 constitutional due process levels; the traditional Watson standard of
16               harmless error applies (i.e., reasonable probability of better result
                 absent the error). (See People v. Partida, supra, 37 Cal.4th at p. 439
17               [absent fundamental unfairness, state law error is subject to the
                 traditional Watson test]; see also pt. IV. of the Discussion, ante.)
18

19   People v. Barber, 2015 Cal. App. Unpub. LEXIS 1349 at *13-15, 2015 WL 872141 at *5.

20                    D.   Objective Unreasonableness Under § 2254(d)

21         It was reasonable for the state court to find no fundamental unfairness here.  There is no

22   reasonable likelihood that the jury applied the challenged instruction in a way that violates the

23   Constitution.  Estelle, 520 U.S. at 72-73.  There was evidence from which the jury could have

24   found that petitioner made a false statement about his reasons for turning himself in.  The fact that

25   petitioner gave an innocent explanation for the statement does not make it unfair for the jury to

26   consider whether or not the statement's falsity reflected awareness of guilt.  Nothing in the

27   instruction would have unduly influenced how the jury decided that question.  Accordingly, this

28   claim fails under AEDPA or de novo review.

1     VII.    Claim Seven: Arbitrary Application of LWOP Sentence Based on Impermissibly

2          Vague Special Circumstances

3          A.  Petitioner's Allegations and Pertinent State Court Record

4     Petitioner alleges that the two special circumstances "were unconstitutionally applied in

5  [an] arbitrary and vague manner."  ECF No. 1 at 6.  He explains further, "The court did not

6  address the application to LWOPs who do not receive a penalty phase, a point not addressed in

7  our Supreme Court's capital cases.  Violation of due process and equal protection."  Id.

8     Petitioner faced two special circumstance allegations: lying-in-wait and shooting from a

9  car.  The jury found both to be true.  2 CT 313.  Petitioner was sentenced to life without parole

10  (LWOP) pursuant to Cal. Penal Code § 190.2, which provides that the penalty for first degree

11  murder with special circumstances is life without parole or death.  (The prosecutor did not seek

12  the death penalty in this case.)

13     On appeal, petitioner argued in this context that defendants facing LWOP sentences under

14  § 190.2 should be provided a penalty phase and other procedural protections granted to capital

15  defendants.  He also argued that the lying-in-wait special circumstance failed to perform a

16  narrowing function in his case because it impermissibly duplicated the prosecution's theory of

17  first-degree murder.  Lodged Doc. 11 at 76-80.

18          B.  The Clearly Established Federal Law

19     The Eighth Amendment requires that a special circumstance genuinely narrow the class of

20  persons subject to the death penalty as compared to other murder defendants.  Godfrey v.

21  Georgia, 446 U.S 420, 428 (1979).  The U.S. Supreme Court has never held that Godfrey or any

22  of its narrowing jurisprudence from the capital case context applies to non-capital cases.  Indeed,

23  the Court has expressly declined to extend capital case protections to the LWOP context, or to set

24  a constitutional rule that states must follow in distinguishing LWOP sentences from life sentences

25  with the possibility of parole.  Harmelin v. Michigan, 501 U.S. 957, 994-96 (1991) (plurality).

26     Eighth Amendment principles and due process vagueness doctrine intersect in the

27  requirement that an aggravating factor that renders a defendant subject to the death penalty must

28  reasonably distinguish his conduct from that of the general run of murderers not to be sentenced

1  to death.  See Tuilaepa v. California, 512 U.S. 967, 971-72 (1994).  The void-for-vagueness

2  doctrine requires that a penal statute define the offense (or, as here, special circumstance) with

3  sufficient definiteness that ordinary people can understand what conduct is prohibited and in a

4  manner that does not encourage arbitrary and discriminatory enforcement.  Kolender v. Lawson,

5  461 U.S. 352, 357 (1983).

6              C.  The State Court's Ruling

7          The California Court of Appeal ruled as follows:

8              Defendant claims "the lying-in-wait and drive-by special
               circumstances were unconstitutionally applied in a vague and
9              arbitrary manner that failed to explain or narrow LWOP or death
               eligibility (versus first degree murder) in any rational way."
10

11             Preliminarily, we note the trial court explicitly used only the lying-
               in-wait special circumstance to impose LWOP.  We also note that
               the California Supreme Court, in People v. Morales (1989) 48 Cal.3d
12             527, has effectively rejected defendant's constitutional claim as it
               pertains to the lying-in-wait special circumstance. (Id. at p. 557,
13             disapproved on another point in People v. Williams (2010) 49
               Cal.4th 405, 459.) We are bound by Morales. (Auto Equity Sales,
14             Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.) Consequently, we
               reject this claim.
15

16  People v. Barber, 2015 Cal. App. Unpub. LEXIS 1349 at *15, 2015 WL 872141 at *6.

17             D.  Objective Unreasonableness Under § 2254(d)

18         The state court's rejection of this claim did not involve any unreasonable application of

19  clearly established federal law.  As noted above, the U.S. Supreme Court has never held that its

20  Eighth Amendment narrowing jurisprudence applies to LWOP cases.  Because there is no clearly

21  established federal law governing the claim, AEDPA bars relief.  See Wright, 552 at 125-126.

22         Moreover, the Ninth Circuit has squarely rejected the same challenge to the lying-in-wait

23  special circumstance that petitioner forwards here.  Houston v. Roe, 177 F.3d 901 (9th Cir. 1999).

24  The Houston court held that (1) the California Penal Code does not violate the Eight Amendment

25  by failing to extend Godfrey supra, to LWOP crimes; (2) the lying-in-wait special circumstances

26  is not void for vagueness, and California law adequately distinguishes between first degree

27  murder lying in wait and special circumstances lying in wait.  Houston, 177 F.3d at 906, 907-908.

28  Houston is binding on this court, and forecloses the claim.

1    VIII.    Claim Eight: Cumulative Error

2            A.   Petitioner's Allegations and Pertinent State Court Record

3        Petitioner alleges that the cumulative effect of the above errors deprived him of due

4    process and a fair trial by an impartial jury.  ECF No. 1 at 6.

5            B.   The Clearly Established Federal Law

6        The combined effect of multiple trial court errors violates due process when it renders the

7    resulting criminal trial fundamentally unfair.  Chambers v. Mississippi, 410 U.S. 284, 298, 302-

8    03 (1973).  The cumulative effect of multiple errors can violate due process even when no single

9    error rises to the level of a constitutional violation.  Id. at 290 n.3.

10           C.   The State Court's Ruling

11       The California Court of Appeal ruled as follows:

12               Having found, at most, three assumed but harmless errors, we reject
                 defendant's claim of prejudicial cumulative error.
13

14   People v. Barber, 2015 Cal. App. Unpub. LEXIS 1349 at *15, 2015 WL 872141 at *6.

15           D.   Objective Unreasonableness Under § 2254(d)

16       Because none of petitioner's individual substantive claims have merit, it was not

17   unreasonable of the state court to reject his cumulative error claim.  See Ybarra v. McDaniel, 656

18   F.3d 984, 1001 (9th Cir. 2011) (petitioner not entitled to relief for cumulative error where trial

19   imperfections do not infect trial with unfairness in violation of due process).

20   IX.     Claim Nine: Consecutive Sentencing Violated Due Process and Double Jeopardy

21           A.   Petitioner's Allegations and Pertinent State Court Record

22       Petitioner's final claim asserts that the trial court's failure to stay the term imposed for

23   count three (firearm possession) violated due process and the constitutional prohibition of double

24   jeopardy.  ECF No. 1 at 6.

25           B.   The Clearly Established Federal Law

26       The U.S. Supreme Court has held that there is no federal constitutional prohibition of

27   consecutive criminal sentences.  Oregon v. Ice, 555 U.S. 160, 164 (2009).

28   ////

                                                    21

1

C.   The State Court's Ruling

2

The California Court of Appeal ruled as follows:

3
4
5
6

> Defendant contends the trial court erred in imposing a three-year consecutive sentence for defendant's conviction for firearm possession by a felon (count three—former § 12021, subd. (a)(1)), rather than staying such sentence under section 654. Defendant claims there was insufficient evidence he possessed the gun separately from the murder and drive-by shooting offenses. We disagree.

7
8
9
10
11

> Section 654 proscribes multiple punishment not only for one act, but for multiple offenses which are committed in a single transaction incident to a single intent and objective. (People v. Latimer (1993) 5 Cal.4th 1203, 1208, 23 Cal. Rptr. 2d 144, 858 P.2d 611.) We uphold a trial court's factual finding regarding whether a defendant had separate intents and objectives if the finding is supported by substantial evidence. (People v. Osband (1996) 13 Cal.4th 622, 730, 55 Cal. Rptr. 2d 26, 919 P.2d 640.)

12
13
14
15
16
17

> We agree with the section 654-restrictive test set forth in People v. Jones (2002) 103 Cal.App.4th 1139, 127 Cal. Rptr. 2d 319. That test forecloses section 654 applicability, in the context of firearm possession by a felon, if there is any evidence the felon possessed the firearm before or after the primary crime, thus evidencing an independent possessory intent. (Id. at pp. 1144-1146.) The reason for this test is simple: The felon firearm possession offense is committed the instant the felon in any way has a firearm within his control. (at pp. 1145-1146.) There's no need to split section 654 hairs for the benefit of felons and firearms. The two should not mix. Applying the stringent test in Jones helps keep them apart.

18
19
20

> Here, there is evidence that defendant arrived at the shooting scene with the firearm in tow, as well as evidence that he possessed the gun after committing the shooting. Accordingly, the trial court acted properly in not staying under section 654 the sentence imposed for the felon firearm possession conviction.

21

People v. Barber, 2015 Cal. App. Unpub. LEXIS 1349 at *15-17, 2015 WL 872141 at *6.

22

D.   Objective Unreasonableness Under § 2254(d)

23

The state court resolved this claim purely as a matter of state law, and that resolution is

24

unreviewable here.   Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (a state court's interpretation of

25

state law binds a federal court sitting in habeas corpus.).   Because the U.S Supreme Court has

26

never held that consecutive sentences can violate the federal constitution—indeed, because

27

Oregon v. Ice, supra, holds to the contrary—there can be no unreasonable application of clearly

28

////

22

1    established federal law within the meaning of § 2254(d).  Wright, 552 U.S. at 125-126.  Habeas

2    relief is therefore unavailable on this claim.

3                                                CONCLUSION

4           For all the reasons explained above, the state court's denial of petitioner's claims was not

5    objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

6    AEDPA standards, petitioner has not established any violation of his constitutional rights.

7    Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

8    denied.

9           These findings and recommendations are submitted to the United States District Judge

10   assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

11   after being served with these findings and recommendations, any party may file written

12   objections with the court and serve a copy on all parties.  Such a document should be captioned

13   "Objections to Magistrate Judge's Findings and Recommendations."  If petitioner files objections,

14   he shall also address whether a certificate of appealability should issue and, if so, why and as to

15   which issues.  See 28 U.S.C. § 2253(c)(2).  Any reply to the objections shall be served and filed

16   within fourteen days after service of the objections.  The parties are advised that failure to file

17   objections within the specified time may waive the right to appeal the District Court's order.

18   Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19   DATED: June 25, 2020

20                                            _____

21                                            ALLISON CLAIRE
                                             UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28